# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
March 9, 2016

Lyle W. Cayce
Clerk

No. 15-10098

C.C., Individually, by and through his next friends, Charles Cripps and Kristie Cripps; KRISTIE CRIPPS; CHARLES CRIPPS,

     Plaintiffs - Appellants

v.

HURST-EULESS-BEDFORD INDEPENDENT SCHOOL DISTRICT; SCOTT HURBOUGH; DAMON EMERY,

     Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:14-CV-646

Before HIGGINBOTHAM, SOUTHWICK, and HIGGINSON, Circuit Judges.
STEPHEN A. HIGGINSON, Circuit Judge:*

CC, by and through his next friends, Charles Cripps and Kristie Cripps, appeals the district court's dismissal of claims against CC's former school district and the principal and vice principal of CC's former school. CC was a student in the school district who had been diagnosed with a disability pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-10098

U.S.C. § 1401 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. This case primarily concerns the school district's decision to transfer CC to Disciplinary Alternative Educational Placement ("DAEP") for sixty days following one particular instance where CC took a picture of a student using the bathroom. On appeal, the Plaintiffs argue that the district court erred in dismissing their claims brought under section 504 of the Rehabilitation Act, 29 U.S.C. § 794. For the following reasons, we AFFIRM.

## I.

The following facts are consistent with the Plaintiffs' pleadings. During the relevant time period, CC was a twelve-year-old male student at Bedford Junior High School, a school within Hurst-Euless-Bedford Independent School District. Scott Hurbough was Bedford's Principal, and Damon Emery was Bedford's Vice Principal. CC suffered from severe Attention Deficit Hyperactivity Disorder ("ADHD"), which qualified him as a student with a disability pursuant to the IDEA and the Rehabilitation Act. Under these statutes, CC received special education services. Despite these services, CC exhibited several "school problems" during the course of the relevant year. These problems included: disobeying teachers; running into a teacher; roughhousing in the classroom; belching in a student's face; and insulting students with vulgar language, such as asking a female student "if she was making porn." CC alleged that the District, Hurbough, and Emery conspired to remove CC from school by categorizing these instances as felonies and encouraging the victims of CC's actions to file criminal charges against him.[1]

The instance at the center of this case occurred when CC took a picture of another student, RL, while he was using the bathroom at school. CC and

---

[1] The teacher that CC ran into did file a criminal charge of assault, which the officer classified as a misdemeanor.

2

another student saw RL laughing and using the bathroom in a stall without a door. RL said "look a[t] this!" and held up toilet paper smeared with feces. The students all laughed, and CC took a picture of RL. Emery conducted an investigation of the incident, and as alleged by the Plaintiffs, Emery concluded that CC's acts were an invasion of privacy and a felony warranting suspension from school. At the encouragement of Emery, RL's father filed a criminal charge against CC. Emery then convened a Manifestation Determination Review ("MDR") meeting to determine whether CC's behavior was the manifestation of his disability, ADHD. The MDR committee concluded that the incident was not the result of CC's ADHD. CC was placed in DAEP for sixty days.

Despite reopening the investigation to determine whether another student also took pictures during the incident, and discovering that the criminal charge had been dismissed, the MDR committee did not revoke CC's placement in DAEP. The Plaintiffs later filed a claim with the Office of Civil Rights, which determined that the Defendants had a legitimate reason for acting against CC and, thus, the retaliation claim failed. The Plaintiffs then filed a petition for a due process hearing under the IDEA, and the hearing officer dismissed each of the Plaintiffs' claims that was not brought under the statute. Following the hearing, the hearing officer issued an order upholding the District's decision.

The Plaintiffs filed a complaint in the Northern District of Texas appealing the result of the due process hearing and alleging substantive and procedural due process violations, a violation of the equal protection clause, and violations of section 504 of the Rehabilitation Act. The Defendants filed a motion to dismiss the complaint for failure to state a claim upon which relief may be granted. The Plaintiffs then filed their first amended complaint, and the Defendants filed a subsequent motion to dismiss. The district court

No. 15-10098

severed the Plaintiffs' appeal of the due process hearing, denied Plaintiffs leave to file a second amended complaint, and granted the Defendants' motion to dismiss the Plaintiffs' remaining claims.   The Plaintiffs timely appealed. During oral argument, counsel clarified that the Plaintiffs limited their challenge to the district court's dismissal of their claims brought under section 504 of the Rehabilitation Act.

## II.

### A.

We review the dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure de novo.  *Spiller v. City of Texas City, Police Dep't*, 130 F.3d 162, 164 (5th Cir. 1997).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). For relief to be plausible, the facts must be more than consistent with unlawful conduct; the facts must suggest liability.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

### B.

The Plaintiffs argue that the district court erred in dismissing their claim that the Defendants violated § 504 by discriminating against CC due to his disability.   Section 504 protects disabled students of school districts receiving federal grants from discrimination "solely by reason of her or his disability."  29 U.S.C. § 794(a); *see Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 990 (5th Cir. 2014).  Taking the allegations in the light most favorable to the Plaintiffs, the complaint attempts to allege discrimination in the form of hostile environment.  To sufficiently allege harassment in the form of a hostile environment under § 504, the Plaintiffs must allege:

(1) [CC] was an individual with a disability, (2) [CC] was harassed based on his disability, (3) the harassment was sufficiently severe or pervasive that it altered the condition of his education and created an abusive educational environment, (4) [Defendants] knew about the harassment, and (5) [Defendants were] deliberately indifferent to the harassment.

*Estate of Lance*, 743 F.3d at 996 (quoting *S.S. v. E. Ky. Univ.*, 532 F.3d 445, 454 (6th Cir. 2008)).  This court has also held that "facts creating an inference of professional bad faith or gross misjudgment are necessary to substantiate a cause of action for intentional discrimination under § 504." *D.A. ex rel. Latasha A. v. Hous. Indep. Sch. Dist.*, 629 F.3d 450, 455 (5th Cir. 2010).

The Plaintiffs did not sufficiently plead discrimination under § 504.  In their first amended complaint, the Plaintiffs alleged that the Defendants formed a conspiracy to remove CC from school by categorizing his infractions as felonies.  Taking the Plaintiffs' conspiracy allegations as true, the Plaintiffs did not sufficiently plead that this conspiracy was based on CC's disability.  *See Estate of Lance*, 743 F.3d at 996.  The Plaintiffs did not allege facts suggesting that the Defendants acted against CC for any reason other than his multiple behavioral infractions.  The Plaintiffs also did not plead facts sufficient to establish that these behavioral infractions were the result of CC's ADHD.  The Plaintiffs' complaint merely states that his ADHD resulted in CC having difficulty "Executing Functioning, which [a]ffects his ability to manag[e] his social environment, make good decisions and communicate in an appropriate manner."  If that conclusory statement were enough to plead discrimination, any plaintiff with ADHD could attribute any misconduct, no matter how severe, to the disability.  In addition, the Plaintiffs' allegations show that the Defendants did not transfer CC until after the MDR determination, which concluded that CC's behavior was not a result of his disability.  The Plaintiffs did not sufficiently plead that any of the Defendants' acts were based on CC's

disability; therefore, the Plaintiffs did not sufficiently plead that the Defendants violated § 504 by discriminating against CC.

### III.

Because we conclude that the Plaintiffs did not sufficiently plead a violation of section 504 of the Rehabilitation Act, we AFFIRM the district court's dismissal of the Plaintiffs' claims.